UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHUNG SONG JA CORP, and KYUNG MI LEE,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES, and DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendants. | Case No. C14-0177RSM<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court on the parties' Cross-Motions for Summary Judgment. Dkts. #16 and #21. Plaintiff Chung Song Ja Corp. ("CSJ") argues that Defendant U.S. Citizenship and Immigration Services ("USCIS") improperly denied its application for an H-1B temporary worker visa, of which Ms. Kyungmi Lee would have been the beneficiary. Specifically, Plaintiff argues that Defendant improperly determined that the position which Ms. Lee would have filled does not qualify as a "specialty occupation" and that Ms. Lee was not qualified for such position in any event. Dkt. #21. Defendant responds that it properly denied the H-1B visa petition because the proffered job does not meet the statutory and regulatory criteria for a "specialty occupation" and because Ms. Lee was not qualified as a specialty occupation worker. Dkt. #16. For the reasons set forth herein, the Court disagrees

with Defendants, DENIES their Motion for Summary Judgment and GRANTS Plaintiff's Motion for Summary Judgment.

## II.  BACKGROUND

CSJ is an acupuncture and traditional Chinese medicine practice in Lynnwood, WA, with three employees.  Dkt. # 17, Certified Administrative Record ("CAR") at 21-27.  On April 8, 2013, CSJ filed a Form I-129 Petition for Nonimmigrant Worker with USCIS seeking to classify Kyungmi Lee, a citizen of South Korea, as a nonimmigrant special occupation worker under section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act ("INA").  *Id.*  CSJ sought to employ Ms. Lee as a part time "Health Care Manager" in its Lynnwood office, for 20 hours per week.  *Id.* at 24-26.  In its Filing Fee Exemption Supplement, CSJ represented that Ms. Lee held a Bachelor's degree in management.  *Id.* at 30.

On June 3, 2013, USCIS issued a Request for Evidence, asking CSJ to submit additional evidence pertaining to the subject job offer, including information about the Company's name and location, evidence pertaining to the proffered position including position requirements, job description, and standards for the specialty occupation position, information regarding Ms. Lee's education and degree, the nature of her specific duties at CSJ, the nature of CSJ's business, and evidence pertaining to Ms. Lee's qualifications.  CAR at 33-42.  On August 20, 2013, CSJ responded, providing documents pertaining to the corporation, such as its business license and financial documents; a job description and nature of Ms. Lee's duties in the proffered position; an organizational chart; an expert opinion evaluation letter pertaining to whether the Health Care Manager position is a "specialty occupation"; and an evaluation of Ms. Lee's training and/or experience by Dr. Audrey Guskey at Duquesne University in Pittsburgh, PA.  CAR at 43-107 and 132-155.

CSJ described Ms. Lee's duties as follows:

- Manage and coordinate personnel, finance, and facility operations, 20%;
- Manage the administration of patients and their records, and maintain patient records to comply with regulations and ensure that databases are complete, accurate, and available only to authorized personnel, 30%;
- Establish and implement policies, objectives, and procedures for the health care center, evaluate personnel and work quality, create employee work schedules, develop reports and budgets, and coordinate activities with health care workers, 20%;
- Oversee personnel matters, billing and collection, budgeting, planning, equipment outlays, and patient flow, 30%.

CAR at 64.

On November 4, 2013, USCIS denied the H-1B visa application on two grounds – first, that CSJ had failed to demonstrate the offered position is a "specialty occupation" within the meaning of the applicable regulations; and second, even assuming that the position did qualify as a specialty occupation, it had not established that Ms. Lee was qualified to perform the services of the specialty occupation through equivalency to completion of a United States baccalaureate or higher degree in the specialty occupation. CAR at 2-19.

As a result, Plaintiffs filed the instant action on February 5, 2014, seeking a reversal of USCIS's decision and an Order directing the agency to grant Plaintiff's H1-B Petition pursuant to section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C § 706. Dkt. #1. The parties now seek to resolve the matter through cross-motions for summary judgment.

## III. APPLICABLE LEGAL STANDARDS

**A. Judicial Review of Administrative Decision**

The Administrative Procedure Act authorizes judicial review where a person "suffer[s] legal wrong because of agency action, or [is] adversely affected or aggrieved by agency action within the meaning of the relevant statute." 5 U.S.C. § 702. The reviewing district court is, in turn, empowered to set aside a final agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The standard is "highly deferential, presuming the agency action to be valid." *Kern County Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006). Even so, the reviewing court properly sets aside an agency decision where "there is no evidence to support the decision or if the decision was based on an improper understanding of the law." *Kazarian v. U.S. Citizenship and Immigration Services*, 596 F.3d 1115, 1118 (9th Cir. 2010) (internal citation omitted).

The agency's factual findings are reviewed for substantial evidence and will not be disturbed "unless the evidence presented would *compel* a reasonable finder of fact to reach a contrary result." *Family Inc. v. U.S. Citizenship and Immigration Services*, 469 F.3d 1313, 1315 (9th Cir. 2006) (internal citation omitted; emphasis in original). Similarly, the Court gives the agency's interpretation of its own regulations "substantial deference" and "controlling weight unless doing so is inconsistent with the regulation or plainly erroneous." *Independent Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000). If the agency has erred, the Court must sill "evaluate whether such an error was harmless." *Kazarian,* 596 F.3d at 1118.

///

///

**B. Summary Judgment Standard**

Courts routinely resolve APA challenges through summary judgment motions. *See Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471-72 (9th Cir. 1994); *Caremax Inc. v. Holder*, 2014 WL 1493621, *3 (N.D. Cal. 2014). Summary Judgment is proper where, viewing the evidence and inferences therefrom in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those that may affect the outcome of the suit under governing law, and an issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Judicial review of an agency action is confined to the administrative record. *National Association of Home Builders v. Norton*, 340 F.3d 835, 841 (9th Cir. 2003). In ruling on a motion for summary judgment, the court does "not weigh the evidence or determine the truth of the matter but only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco*, 41 F.3d 547, 549 (9th Cir. 1994) (internal citations omitted). Consequently, the function of the Court on summary judgment is "to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Engineering Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985).

## IV. DISCUSSION

Plaintiff argues that USCIS abused its discretion in denying CSJ's H-1B visa petition. Specifically, Plaintiff contends that USCIS erroneously interpreted regulatory requirements, ignored evidence, and misapplied clear legal standards when it determined that CSJ had failed

to sustain its burden of proving that the proffered position qualifies as a "specialty occupation" or that Ms. Lee was qualified for such position. Dkt. #21. The Court examines each issue, in turn, below.

**A. Applicable Statutory and Regulatory Framework**

The INA permits qualified nonimmigrant aliens to temporarily perform services in the United States if they are sponsored by an employer in a "specialty occupation." 8 U.S.C. § 1101(a)(15)(H)(i)(b). Before a visa may issue, an employer must obtain certification from the Department of Labor that it has filed a labor condition application in the specific occupational specialty. 8 C.F.R. § 214.2(h)(4)(ii). The employer must then file an H-1B visa petition on behalf of the alien worker, which shows that the proffered position satisfies the statutory and regulatory requirements. 8 U.S.C. § 1184(c). The INA defines a "specialty occupation" as an occupation that requires:

> (A) Theoretical and practical application of a body of highly specialized knowledge, and
>
> (B) Attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States.

8 U.S.C. § 1184(i).

USCIS has also enacted agency regulations fleshing out H1-B requirements. The regulations define "specialty occupation" and provide a non-exhaustive list of fields that may satisfy the definition:

> Specialty occupation means an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific

specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

8 C.F.R. § 214.2(h)(4)(ii). USCIS has further developed a set of four criteria to determine whether an occupation qualifies as a "specialty occupation," one of which must be satisfied:

(1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into a particular position;

(2) The degree requirement is common to the industry in parallel positions among similar organization or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

(3) The employer normally requires a degree or its equivalent for the position; or

(4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A). The burden of proving that a particular occupation comes within these regulations rests with the petitioner. *Royal Siam Corp. v. Chertoff*, 484 F.3d 139, 145 (1st Cir. 2007) (citing 8 U.S.C. § 1361).

Upon establishing that a position is a "specialty occupation," the H-1B visa petitioner must also demonstrate that the alien worker is qualified to work in such a position. *See* 8 U.S.C. § 1184(i)(2); *Caremax*, 2014 WL 1493621, *3. The regulations require that the beneficiary alien satisfy one of four qualifying criteria: that the alien (1) hold a U.S. bachelor or higher degree required by the specialty occupation from an accredited college or university, (2) hold an equivalent foreign degree, (3) hold an equivalent state license, registration, or certification authorizing her to full practice the specialty occupation, or (4) hold an equivalent combination of education, specialized training, and work experience. 8 C.F.R. § 214(h)(4)(iii)(C).

**B. Application of the Regulatory Criteria**

*1. Specialty Occupation*

The Court first examines whether CSJ's proffered position qualifies as a "specialty occupation" under the statutory and regulatory framework. As an initial matter, the parties disagree as to whether a generalized bachelor degree requirement is sufficient to render a position sufficiently specialized to qualify for H-1B status. *See* Dkts. #16 at 7-9 and #21 at 7-11. To this extent, the Court agrees with Defendant and finds the answer to this question well-settled in the case law and USCIS's reasonable interpretations of the regulatory framework. *See Raj & Co. v. United States Citizenship & Immigration Servs.*, 2015 U.S. Dist. LEXIS 5157, *10-11 (W.D. Wash. Jan. 14, 2015). While 8 C.F.R. § 214.2(h)(iii)(A)(1) does not use the language of "specific specialty," USCIS does not abuse its discretion in reading this regulation together with 8 C.F.R. § 214(h)(4)(ii), which defines a "specialty occupation" as one that "requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent." *See In re Petitioner [Identifying information redacted by Agency]*, 2013 WL 8124091, **8-11 (OAH, Dec. 24, 2013) (explaining that the "regulatory language must be construed in harmony with the thrust of the related provisions and with the statute as a whole"). This latter definition is identical to that provided by the INA itself. *See* 8 U.S.C. § 1184(i)(1). The requirement of a specialized degree, or its equivalent, is also in keeping with the intent of the H-1B visa program, which "allows an employer to reach outside of the U.S. to fill a temporary position because of a special need, presumably one that cannot be easily fulfilled within the U.S." *Caremax*, 2014 WL 1493621, *4. Permitting an occupation to qualify simply by requiring a generalized bachelor degree would run contrary to congressional intent to provide a visa program for specialized, as opposed to merely educated,

workers. *See Royal Siam Corp.*, 484 F.3d at 147 (providing that an employer should not be able to "ensure the granting of a specialty occupation visa petition by the simple expedient of creating a generic (and essentially artificial) degree requirement").

That said, the Court agrees with Plaintiff that it has plainly met its burden to show that the position of a "health care manager" satisfies the first qualifying criterion. The first regulatory criterion requires the agency to examine the generic position requirements of a health care manager in order to determine whether a specific bachelor's degree or its equivalent is a minimum requirement for entry into the profession. In making this determination, USCIS relied, as is its practice, on the Department of Labor's Occupation Outlook Handbook ("OOH") profile of the "medical and health services manager position. Dkt. #16 at 8; *Royal Siam Corp.*, 484 F.3d at 1456 ("In its review of petition for nonimmigrant work visas, CIS frequently – and sensibly – consults the occupation descriptions collected in the [OOH]."). The OOH describes the typical training and qualification requirements for a medical and health services manager, in relevant part, as follows:

> Medical and health services managers typically need at least a bachelor's degree to enter the occupation. However, master's degrees in health services, long-term care administration, public health, public administration, or business administration also are common.
>
> Prospective medical and health services managers have a bachelor's degree in health administration.

CAR at 205. Based on this description, USCIS determined that:

> while most Medical and Health Services Managers have at least a bachelor's degree, it is not actually a requirement to enter the field. Requirements vary by facility. Further, for those positions that require a bachelor's level degree, there is no requirement for the degree to be in a specific specialty as required by the regulation.

ORDER - 9

CAR at 7. This position has been rejected by at least one other District Court in this Circuit.

In *Warren Chiropractic & Rehab Clinic, P.C., et al. v. United States Citizenship & Immigration Services, et al.*, Case No. SAVC 14-0964 AG (RNBx) (C.D. Cal. Jan. 12, 2015), provided in the record at Dkt. #30, the Central District of California reversed the denial of an H-1B visa, finding that medical and health services managers constituted a specialty occupation. Further, Defendant's approach impermissibly narrows the plain language of the statute. The first regulatory criterion does not restrict qualifying occupations to those for which there exists a single, specifically tailored and titled degree program. Indeed, such an interpretation ignores the statutory and regulatory allowance for occupations that require the attainment of the "equivalent" of specialized bachelor's degree as a threshold for entry. 8 C.F.R. § 214.2(h)(4)(ii); 8 U.S.C. § 1184(i). By including this language, Congress and the INA recognized that the needs of a specialty occupation can be met even where a specifically tailored baccalaureate program is not typically available for a given field. *See Tapis Intern. v. INS*, 94 F.Supp.2d 172, 176 (D. Mass. 2000) (rejecting agency interpretation because it would preclude any position from satisfying the specialty occupation requirements where a specifically tailored degree program is not available). While an agency has considerable leeway to interpret statutes and regulations it enforces, it is not at liberty to read plain language out of a statute. *See Bennett v. Spear*, 520 U.S. 154, 173 ("It is the cardinal principle of statutory construction that it is our duty to give effect, if possible, to every clause and word of a statute rather than to emasculate an entire section.") (internal quotations and alterations omitted).

Accordingly, the Court finds that USCIS abused its discretion in reaching a decision that was not in accordance with the statutory and regulatory framework, and its decision shall be reversed on that point.

*2. Ms. Lee's Qualifications*

The Court next turns to whether CSJ failed to show its intended visa beneficiary, Ms. Lee, is qualified to perform services in the specialty occupation of Health Services Manager. As noted above, CSJ must demonstrate that Ms. Lee meets one of four criteria to demonstrate that she is qualified to work in such a position. Plaintiff essentially argues that Ms. Lee is qualified because she holds an equivalent combination of education, specialized training, and work experience as if she had received a Bachelor's degree. Dkts. #21 and #26.

To qualify to perform services as Health Services Manager for CSJ under the degree equivalency prong of the applicable regulation, CSJ must establish that Ms. Lee has <u>both</u> education, specialized training, and/or progressively responsible experience that is equivalent to completion of a United States baccalaureate or higher degree in the specialty occupation, <u>and</u> recognition of expertise in the specialty through progressively responsible positions directly related to the specialty. 8 C.F.R. § 214.2(h)(4)(iii)(C)(4). The regulations further define this test:

> equivalence to completion of a United States baccalaureate or higher degree shall mean achievement of a level of knowledge, competence, and practice in the specialty occupation that has been determined to be equal to that of an individual who has a baccalaureate or higher degree in the specialty and shall be determined by <u>one or more of the following</u>:
>
> (1) An evaluation from an official who has authority to grant college-level credit for training and/or experience in the specialty at an accredited college or university which has a program for granting such credit based on an individual's training and/or work experience;

(2) The results of recognized college-level equivalency examinations or special credit programs, such as the College Level Examination Program (CLEP), or Program on Noncollegiate Sponsored Instruction (PONSI);

(3) An evaluation of education by a reliable credentials evaluation service which specializes in evaluating foreign educational credentials;

(4) Evidence of certification or registration from a nationally-recognized professional association or society for the specialty that is known to grant certification or registration to persons in the occupational specialty who have achieved a certain level of competence in the specialty;

(5) A determination by the Service that the equivalent of the degree required by the specialty occupation has been acquired through a combination of education, specialized training, and/or work experience in areas related to the specialty and that the alien has achieved recognition of expertise in the specialty occupation as a result of such training and experience. For purposes of determining equivalency to a baccalaureate degree in the specialty, three years of specialized training and/or work experience must be demonstrated for each year of college-level training the alien lacks. For equivalence to an advanced (or Masters) degree, the alien must have a baccalaureate degree followed by at least five years of experience in the specialty. If required by a specialty, the alien must hold a Doctorate degree or its foreign equivalent. It must be clearly demonstrated that the alien's training and/or work experience included the theoretical and practical application of specialized knowledge required by the specialty occupation; that the alien's experience was gained while working with peers, supervisors, or subordinates who have a degree or its equivalent in the specialty occupation; and that the alien has recognition of expertise in the specialty evidenced by at least one type of documentation such as:

(i) Recognition of expertise in the specialty occupation by at least two recognized authorities in the same specialty occupation;

(ii) Membership in a recognized foreign or United States association or society in the specialty occupation;

|   |   |
|---|---|
| (iii) | Published material by or about the alien in professional publications, trade journals, books, or major newspapers; |
| (iv) | Licensure or registration to practice the specialty occupation in a foreign country; or |
| (v) | Achievements which a recognized authority has determined to be significant contributions to the field of the specialty occupation. |

8 C.F.R. § 214.2 (h)(4)(iii)(D) (emphasis added).

Plaintiff argues that Ms. Lee meets at least one of criterion 1, 3 or 5. First, CSJ argues that it has provided an evaluation from an official who has authority to grant college-level credit for training and/or experience in the specialty at an accredited college or university which has a program for granting such credit based on an individual's training and/or work experience, relying on Dr. Guskey from Duquesne University. Dkt. #26 at 5. Dr. Guskey concluded that Ms. Lee has three years of academic coursework and more than four years of qualifying experience and training, which equate to a Bachelor of Science in Management. CAR at 69. Dr. Guskey specifically found that Ms. Lee's three of years of coursework in South Korea was substantially similar to those required toward the completion of three years of academic course work leading to a bachelor's degree from an accredited institution of higher education in the United States and that she had more than four years of professional training in experience in management. CAR at 70-72. Dr. Guskey opined that Ms. Lee has attained the equivalent of a Bachelor of Science in Management from an accredited institution of higher education in the United States and that the skills she has acquired will allow her to perform the job duties required of the position at CSJ. CAR at 72-74.

USCIS argues that it properly discounted Dr. Guskey's report because the report was nearly identical to the report from a different expert evaluating Ms. Lee's foreign credentials,

calling into question whether Dr. Guskey actually conducted her own analysis, and because Dr. Guskey is a professor of marketing not business, and therefore she does not constitute an official who has authority to grant college-level credit for training and/or experience in the specialty. Dkt. #16 at 17-20. While it is true that credential evaluations may be discounted, the Court finds that USCIS arbitrarily discounted Dr. Guskey's report in this case. *See Matter of Sea, Inc.*, 191 I&N Dec. 817, 820, 1998 WL 235471 (Comm'r 1988) (noting that credential evaluations are not binding, and may be discounted when "questionable"). Indeed, USCIS appears to have completely ignored a letter from the Dean of the Palumbo School of Business at Duquesne University, Dr. Alan Miciak, stating that Dr. Guskey is qualified to review foreign credentials in the concentrations of Business Administration, Management, Marketing, Communication and related fields. CAR at 75. It also ignores that Dr. Guskey is a consultant in the same manner for companies such as FedEx, the Pittsburgh Pirates, United Way and Highmark Blue Cross/Blue Shield. *See* CAR at 70. Further, there is no evidence in the record to support the speculation by USCIS that Dr. Guskey may have fabricated her report in some way.

For these reasons, the Court finds that USCIS improperly determined that CSJ had failed to demonstrate that Ms. Lee had the equivalence to completion of a United States baccalaureate or higher degree in the specialty. Because the regulations only require Ms. Lee to meet one of the enumerated criteria, Dr. Guskey's evaluation was enough to support the conclusion that she had, and the Court need not evaluate the remaining criteria. *See* 8 C.F.R. § 214.2 (h)(4)(iii)(D)(1). Accordingly, the Court finds that USCIS abused its discretion in reaching a decision that was not in accordance with the statutory and regulatory framework, and its decision shall be reversed on this point as well.

## V.  CONCLUSION

For the reasons discussed herein, the Court FINDS that USCIS committed an abuse of discretion by denying CSJ's petition for an H-1B visa for Ms. Lee. Accordingly, the Court hereby GRANTS Plaintiff's Motion for Summary Judgment (Dkt. #21) and DENIES Defendants' Motion for Summary Judgment (Dkt. #16). Defendants are ORDERED to GRANT Plaintiff's Petition for H-1B status.

DATED this 11 day of March 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE